Mr. Justice Wolf did not take part in the decision of this case.

---

## LÓPEZ *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO.

### APPEAL from the District Court of Mayagüez.

No. 22.—Decided June 28, 1906.

APPEAL—TRANSCRIPT OF RECORD.—The transcript of the record presented to the Supreme Court, on appeal must be complete in all respects, having a well-defined beginning and end, and must contain a clear and concise statement of the proceedings had before the trial court.

ID.—DOCUMENTS WHICH SHOULD BE CONTAINED THEREIN.—A transcript of the record must contain, in addition to the notice of appeal, the judgment-roll, a statement of the case, a bill of exceptions and statement of facts, in those cases where any of these documents are necessary to a decision by the appellate court.

ID.—BILL OF EXCEPTIONS—HOW SAME SHOULD BE PREPARED.—In order to prepare a bill of exceptions in proper form it should be made a distinct document and as such appear in the transcript, properly headed, with the style and number of the action and the nature of the demand with the recital that it is a bill of exceptions.

ID.—HOW SAME SHOULD BE DRAWN.—A bill of exceptions should begin something like this: ''Be it remembered that on such and such a date, in the above-styled case, the following proceeding took place, and the following evidence was introduced on the trial''; setting out the proceedings or the facts or the evidence in relative form.

ID.—STENOGRAPHER'S NOTES—PURPOSE THEREOF.—The stenographer's notes should not be sent to the Supreme Court. Counsel should use them in the preparation of the bill of exceptions and this is the purpose for which they are made.

ID.—OBJECTIONS MADE DURING TRIAL—QUESTIONS OF LAW RAISED THEREIN—DECISIONS OF THE COURT.—Questions of law arising during the progress of a trial must be faithfully stated in the bill of exceptions, and the objections made by the party presenting the bill should be clearly stated, as well as the decision of the court thereon. These matters should be prepared in such a way as to present to the court the questions of fact or of law in controversy.

ID.—CASES IN WHICH THE PARTIES DISAGREE AS TO THE BILL OF EXCEPTIONS—AMENDMENTS.—When the parties cannot agree upon the amendments to a bill of exceptions, the same should be presented to the judge for settlement and approval.

Id.—Approval and Certificate of Judge.—The approval by the judge of a bill of exceptions should be made in the form of a certificate to the effect. that the bill is a true and correct one, and he should make an order that the same be filed by the secretary and made a part of the record.

Construction of Laws Adopted from Other States.—Where the legislature of one State adopts a law in force in another State, it will be presumed that it also adopts the construction which the courts of the latter State may have placed upon the said law.

Judicial Decisions—Presumption.—It will be presumed that judicial decisions are in accordance with law except where the contrary is shown.

Allegations—Demurrer—Questions of Law and of Fact.—It is a general rule that where a demurrer and an answer to the complaint raising questions of law and of fact are filed at the same time, the questions of law should be decided first; and in cases where both questions of law and of fact have been raised and the trial in the case has been held and a decision is reached upon the questions of fact, and judgment is rendered in the case, it will be presumed on appeal that the questions of law were disposed of by an order overruling the demurrer.

Id.—In this case it appears from the transcript that the defendant filed a demurrer to the complaint but the decision thereon does not appear in the record. It was held that the court having proceeded to try the case, it must be presumed that the questions of law were decided against the defendant.

Id.—Appeal—Cause of Action.—Whether or not demurrer was filed in the district court, the Supreme Court nevertheless has jurisdiction to decide whether the complaint sets up facts sufficient to constitute a cause of action.

Id.—Allegations in Complaint—Actions Ex Contractu or Ex Delicto.—The allegations in a complaint must be sufficiently clear and explicit in order that the defendant may understand the nature and the basis of the demand of the plaintiff, and whether the action prosecuted by the plaintiff is an action *ex delicto* or *ex contractu*, and, if the latter, whether express or implied.

Accidents—Damages and Losses—Liability of Employers to Employees and to Those Who Assist Them.—In those cases in which companies are liable for damages by reason of accidents to their employees, such liability is directly to them and cannot be construed to have been transferred to persons assisting such employees to the extent of giving them a right of action against the company to recover the value of the service rendered, unless the latter authorized the performance of such service.

Id.—Indemnity for Medical Services Rendered.—In this case the plaintiff alleges that by reason of a collision between a hand car and a locomotive several persons were injured and one person was killed; that the station master and the section foreman in the employ of the defendant company called upon the plaintiff as a physician to render service to the injured persons, which he did; and that the company paid for the medicines used in the treatment of the injured employees, · but refused to pay the plaintiff his fees. *Held:* That these acts are not sufficient to constitute a cause of action because the company is not liable in general terms for the payment of such service and the action of their employees is not sufficient to warrant the presumption of the existence of an implied contract binding upon the defendant to pay such service.

APPEAL—TRANSCRIPT OF RECORD—EVIDENCE—DOCUMENTS ACCOMPANYING COM-
PLAINT.—Where a party seeks to make use of on appeal of documents which
have been made to form a part of the complaint, in accordance with the
provisions of section 119 of the Code of Civil Procedure, he must see that they
are duly identified in the transcript presented to the Supreme Court, in order
that this court may know which documents were annexed to the complaint
and which were introduced merely as evidence during the trial.

The facts are stated in the opinion.

*Mr. de Diego* attorney for appellant.

*Mr. Rossy* attorney for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

On the 3d of November, 1905, Dr. Eurípides López y Quiñones brought an action in the District Court of Mayagüez against the American Railroad Company, to recover $611, fees for professional services, which he claimed to have rendered to certain employes of the railroad company who had been injured in an accident which occured in a collision between a hand car and a locomotive, on the company's track near San Germán, on the 12th day of July, 1904. To this complaint the defendant filed a demurrer and an answer on the 20th of November, 1905. The demurrer is based on the ground that the complaint does not state facts sufficient to constitute a cause of action, because the contract is not set out which was supposed to have been entered into between the company and the plaintiff for the rendition of the services which gave rise to the action instituted by the said plaintiff, nor is it anywhere stated that said services were rendered at the request of the defendant company. The answer then proceeds to deny all the facts alleged in the complaint, except those stated in the first and sixth paragraphs. The first paragraph of the complaint states the circumstances of the accident, and the sixth states that the plaintiff sent a letter to one Sr. Catinche, an agent of the company, in which he suggested that if the company did not intend to pay him for his services that it would send one of its own physicians to attend the wounded men, since the plaintiff did not propose to render his services gratuitously; to which Sr. Catinche replied as set forth in the letter of the

30th of July, 1904, which is said to be attached to the complaint. This letter appears to be dated on the 20th instead of the 30th of July, and explained to the plaintiff that he, as attorney in fact of the railroad company, had nothing to do with the matter, and advised him to address himself to the railroad company, etc. These facts, as stated in the complaint, are admitted by the answer. The defendant in its answer then proceeds to state that the plaintiff, as a physician, was called on to render his professional services to the wounded men, by a policeman, and by a private individual, and that when Dr. López arrived at the place of the accident he found the *alcalde* of the town of San Germán already there making arrangements to care for the wounded men, and that the *alcalde* ordered Dr. López, the plaintiff, to attend to the wounded men, and they were accordingly transferred to the municipal hospital, where the physician rendered them professional assistance.

The answer further states, that at the request of the railroad company the *fiscal* of the District Court of Mayagüez made an investigation, in which he found that it was not proven that Rafael Báez and Jorge and Pablo Levis y Bayen voluntarily and maliciously caused the collision between the locomotive and the hand car on which the wounded men were riding. This last allegation is unimportant in the decision to be here rendered.

The answer further says that even supposing that the railroad company was under obligation to pay for the services rendered by Dr. Eurípides López, that such services were not worth near the sum of $611, which was an exorbitant charge for the same. Nor does the amount of the claim figure in the case as presented here.

The answer prays that the demurrer may be sustained and the suit dismissed, but in the case it should be overruled, that the judgment should be rendered in favor of the defendant with all costs against the plaintiff.

On the 2d of January, 1906, the District Court of Mayagüez rendered the following judgment:

"In this case the court, after hearing the allegations of the litigants, and the evidence presented at the trial, is of the opinion that the law and the facts are in favor of the plaintiff, and therefore declares the action well founded.

"It is therefore ordered that the plaintiff, Eurípides López, obtain and recover from the defendant, The American Railroad Company of Porto Rico, the sum claimed—that is to say, the sum of $611—and that the said defendant pay the cost of the suit, for which a proper writ shall issue to the district marshal to satisfy this judgment.

"The court has taken into account, as a basis on which to render this judgment, the facts that the acts done by and in the name of the defendant company, from their very nature constitute an indemnity for the victims of the railroad accident, in the true and genuine legal sense of the word, and not a mere act of humanity as the said company claims; or in more correct and appropriate terms, that the acts of the company cannot and should not be considered at law as the expression of liberality, as where there exists an obligation to indemnify no favor or liberality enters into the matter, even though such action was taken on the initiative of the company itself, without the demands of the victims or their legal heirs, but by express or tacit acceptance by the same, because such acts certainly prove that the obligation is legitimate, and as this one has been complied with spontaneously by the defendant company without the necessity of being forced to do so by judicial compulsion; that these acts being the logical consequence of the railroad accident on account of the fault or negligence of the defendant company, the civil obligation to indemnify the victims of the accident or their heirs is resolved into a perfect and legitimate right to be indemnified for damages and corporeal injuries suffered; that the amount of the indemnity includes, among other things, the amount spent for medical attendance, which together with other circumstances should be taken into consideration by the court in determining the amount of the same; that this being so, it cannot be denied in strict justice that the plaintiff has no action at law to recover for his professional services to the victims referred to, as although it may be true that these latter were satisfied to accept the paltry settlement which the company made as indemnity to them, it is no less true that those victims being insolvent, or to speak more clearly, completely poor in the legal meaning of the word,

not having any other income than their daily pay for their labor, which is barely sufficient to pay for their absolute necessities, they could not well renounce a right which they had not yet acquired, or to pay themselves from the amount not required for medical assistance, because no man can renounce a right which he has not and besides, even admitting that this were so, the renouncement in this case would be wholly null and void because it would injure the rights of a third party, and be made to their own prejudice, according to article 4 of the Civil Code; that the insolvency or state of poverty of the victims of the accident cannot serve as an argument to deprive a third party of his right to be paid for his labor or medical assistance with efficacy to the said victims, since that right of a third party, the case under consideration being of a professional nature, starts directly from the duty or obligation of the defendant company to indemnify the victims of the accident who cannot (and specially the company), unjustly gain thereby, that is with loss to the third person who in good faith rendered his services with full knowledge of the company and without pretext therefrom, which company cannot enrich itself with unremunerated labor of others, enrichment in this case being understood as an increase or benefit in the capital of said company by retaining in its possession amounts which should have been paid faithfully; that such considerations are most emphatically corroborated by the law of the Legislative Assembly of Porto Rico of the 1st of March, 1901, in regard to the responsibility of employers for accidents to employes in their service, together with article 1788 and 1805 and following of title 16, chapter 2, book 4, of the Civil Code at present in force.''

From this judgment of the trial court the defendant railroad company took an appeal to this court, and filed herein what purports to be a transcript of the record on the 7th of March last. We cannot permit this record to be considered without calling attention to the manner in which it has been prepared. It is merely thrown together without paging, and without any indication of what the different papers which should compose the record consist, and it concludes with this certificate:

''I certify that the preceding copies are correct and exact copies of the originals. Mayagüez 21st of February, 1906.—Fernando Vázquez, attorney for the appellant.''

A transcript of the record made by the court below should when presented to this court, be a complete document with a distinct beginning and ending and giving a clear account of the proceedings taken in the trial court. It should contain with the notice of appeal the judgment-roll, and include a statement of the case, a bill of exceptions and a statement of facts, if any of these are necessary to a decision to be rendered by this court of appeals. (Code of Civil Procedure, sections 299, 300, 301, 302.)

It is true that among the other papers there is found one which may be supposed to be intended for a bill of exceptions from the pencil marks on the top of the page. This supposed bill of exceptions is not prepared in the proper form. It does not state that it is a bill of exceptions, nor does it state that evidence was taken on the trial of the case, nor what that evidence was, but merely embodies questions and answers which may have been copied perhaps from the stenographer's notes. Then follow amendments to the so-called minutes of the bill of exceptions, with the certificate of the district judge that it was approved, sealed and signed by him with the amendments presented to the same, and ordering that it be returned and delivered to the secretary of the court and attached to the judgment-roll. Another certificate by the officer states that the bill of exceptions with the amendments presented have been accepted by him, signed and sealed, and that they are believed to be correct and true. These certificates are dated the 15th of February, 1906. Why two certificates of the judge were deemed necessary does not appear. There should be but one.

In order to prepare a bill of exceptions in proper form it should be made a distinct document, and as such appear in the transcript, properly headed, with the style and number of the action, and the nature of the demand, with the recital that it is a bill of exceptions. It should begin something like this: "Be it remembered that on such and such a date, in the above

styled case, the following proceeding took place and the following evidence was introduced on the trial;'' or, the following facts were proven on the trial, setting out the proceedings or the facts or the evidence in narrative form. Of course, the stenographer's notes should be used by the attorney in preparing the bill of exceptions; that is the purpose for which they were made. Such notes, nor copies thereof, are not under any circumstances to be sent to this court. If any questions of law have been raised upon the trial they can be set out as they occurred in the bill of exceptions, together with the ruling of the court thereupon, and it should also be stated what objections were made by the party preparing the bill of exceptions, and what were the rulings of the court made thereon.

These matters should be so clearly stated as to present to this court exactly the questions of law or of fact involved. And finally, if the bill of exceptions should be amended by the opposing counsel and the amendments accepted by the counsel preparing the bill, they should be incorporated into it in proper form, and not merely attached thereto as amendments. When the counsel agree upon the bill of exceptions, if they can agree, it should be presented to the judge for his approval, and if no agreement can be made the original bill with the amendments proposed thereto should be presented to the judge for his decision as to what amendments should be allowed; and finally, when the amendments are settled, the bill should be redrawn, with the amendments incorporated into it, so as to make a perfect bill which can be approved by the court. If necessary, the judge may make further amendments and changes to conform to the truth of what occurred at the trial. When thus amended and engrossed the bill of exceptions should be approved by the judge and filed by the secretary and made a part of the record. The judge should certify that the document is correct and true and make an order that the same be filed by the secretary and become a part of the record. All this should appear over the official signature in a written certificate of the judge trying the case.

No such procedure has been followed in this case. It is impossible to tell what the bill of exceptions is intended to contain. It has no proper beginning and the amendments made by the judge would have to be collated and compared by the justices of this court and incorporated into the original body of the bill. This is a clerical labor which is not incumbent upon us. The form of the document presented here is as rude as could possibly be, and the pencil marks which are made from time to time on the margin of the pages, though they cannot be considered as a part of the document, are the only guide which we have for the identification of the different papers contained in the record.

By a reference to Estee's Pleadings, volume 3, chapter 3, directions can be found for the proper preparation of bills of exceptions and statements on appeal, and reference is made thereto as authority. Directions are also given for the preparation of bills of exceptions in section 216 of our Code of Civil Procedure. If this section is carefully studied and followed there need be no such errors committed as are apparent on the face of this record.

What has been said in regard to the bill of exceptions also applies to the whole record in the case. It is hard to imagine how a record could have been more loosely or negligently prepared.

But inasmuch as the record contains a copy of the judgment-roll, as prescribed in section 233 of the Code of Civil Procedure, the appeal will not be dismissed for want of a bill of exceptions or the other informalities apparent therein.

Nothing appears in the record to show what action was taken by the court upon the demurrer presented by the defendant to the complaint. According to the American Jurisprudence from this nonaction of the court, two different inferences may be drawn. In the States of Connecticut, Illinois, Indiana, Iowa, Kentucky, Mississippi and Texas it is generally held that where a demurrer is interposed, and not acted

upon by the court, the party demurring, by not demanding action on his demurrer, must be held to have waived or withdrawn it. In Alabama a distinction is drawn between demurrers which are based on the ground that the complaint does not state sufficient facts to constitute a cause of action and other demurrers which are made to matters of form. (*Eastland* v. *Sparks,* 22 Ala., 607; *Lucas* v. *Hitchcock,* 2 Ala., 289; *Pitts* v. *Opeleika Dist.,* 79 Ala., 527; *Birmingham F. M.* v. *Wilder,* 85 Ala., 593.)

In California there seems to be a distinction drawn between demurrers which are filed to the complaint and those which are filed to an answer. In the cases of *Brooks* v. *Douglass,* and *Abadie* v. *Cerrillo,* reported in 32 California, on pages 209 and 172, respectively, it is held that where a demurrer is presented to the complaint and the record fails to show any action thereon, the presumption is that the demurrer has been overruled. But in the cases of *McCarthy* v. *Yale,* 39 California, 585, it is held that in a case where the demurrer is presented to a cross-bill and no action is shown by the trial court, the presumption is that the plaintiff had waived or withdrawn the same. In Idaho it is announced, by the decisions of the court of last resort, that the rule is that where there is both a demurrer to the complaint and an answer raising issues both of law and of fact the issue of law should be first disposed of, such action being required by the statute. And that in cases when there are both issues of law and fact and the case is brought on for trial, and the issues of fact are tried and the judgment rendered in the case the presumption will be indulged on appeal, that the issue of law was previously disposed of by an order overruling the demurrer. (See *Guthrie* v. *Phelan,* 2 Idaho, 99.)

If we compare section 199 of the Code of Civil Procedure with the corresponding sections of the codes of Idaho, Montana and California, we will find that they are copies of each other. Section 199 of our Code of Civil Procedure is a copy of section 392 of the California Code, which is copied in section

1034 of the Montana Code, and section 3454 of the corresponding Code of Idaho. Inasmuch as our Code of Civil Procedure is taken almost bodily from the similar Code in the State of Idaho, we must hold that the presumption which should be drawn from the want of action on the demurrer by the trial court, when the case is taken up on appeal, should be in accordance with the decision of the Supreme Court of Idaho in the case above cited. We have frequently followed the decisions of the Supreme Court of California in criminal cases, because many of the sections of our Penal Code and Code of Criminal Procedure are exact reproductions of the California Codes, and of course when they were adopted the construction given by the courts to them were also presumed to have been adopted with them. The same presumption follows in the adoption by our Legislature of the Code of Civil Procedure from the Statutes of Idaho. And moreover, it is a general presumption that all actions of a court are taken to have been made in accordance with law unless something is shown to the contrary. Section 199 of the Code of Civil Procedure says that where in these cases there are issues both of law and fact, the issue of law must be first disposed of. In other cases, issues of fact must be tried by the court, subject to its power to order an issue to be referred to a referee, as provided in this Code. The cases referred to in that section are actions for the recovery of specific real or personal property, and for money claimed upon contract, or for damages for breach of contract, or for injuries received, etc. We should then, in accordance with these principles, presume that the trial court acted in accordance with the statute, and first decided the questions of law presented by the demurrer and overruled the same; otherwise it could not have proceeded to the trial of the issues of fact which were presented in the answer. The court below having proceeded to the trial of the issues of fact the issues of law are presumed to have been determined adversely to the defendant who presented his demurrer to the complaint.

It is unnecessary to consider what would have been the decision of this court had the demurrer been based upon other grounds than the one set forth that the complaint did not state facts sufficient to constitute a cause of action, for the latter is the case at bar. Nor is it necessary to speculate as to what this court would decide if the demurrer were presented by the plaintiff to the answer of the defendant, as no such case is before the court. This presumption that we have indulged in is of course confined to the pleadings as they are presented, and the record as it is found in this court. This court could, moreover, properly consider the question as to whether or not the complaint states facts sufficient to constitute a cause of action, even had no demurrer been presented to the same in the court below, because by section 109 of the Code of Civil Procedure it is provided:

"If no objection be taken, either by demurrer or answer, the defendant must be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action." (See Code of Civil Procedure, p. 216.)

So it matters not what presumption may be indulged in, touching the rulings made by the court below, we have authority to determine whether or not the complaint in this case states facts sufficient to constitute a cause of action.

The complaint, after a careful consideration of it in its entirety must be considered as subject to a general demurrer, because it does not state facts sufficient to constitute a cause of action, nor does it show any liability on the part of the defendant company to pay the plaintiff's demand.

No authority is alleged on the part of the station master, nor on the part of the section foreman to employ a surgeon or physician, and whatever they or either of them may have done in that direction, which is stated in the complaint in a very loose and unintelligible manner, would not bind the company unless they or he had authority so to do. It is difficult to see

from the allegations of the complaint whether the pleader is endeavoring to hold the company liable on a contract, either express or implied, or whether he is endeavoring to state an action of tort. In other words, no one can say from reading the complaint whether the obligation of the company as pre-sented therein arises *ex contractu* or *ex delicto*. The allegations should certainly be sufficiently definite to allow the defendant to know what is the ground on which it is required to make payment of the plaintiff's demand. Then it should further appear in the complaint, if the defendant is sued upon a contract, whether it is an express or an implied contract. Clearly if the intention was in this case to bring an action upon a contract it could only have been an implied contract.

The plaintiff alleges in the first six paragraphs of his complaint that an accident occurred which was caused by a collision between a hand car and a locomotive upon the defendant's railroad, in which several men were wounded, and from these wounds one of them died. The wounded men were taken to the municipal hospital in San Germán, and there attended on by the plaintiff, who is a doctor of medicine, and appears to be the municipal physician of that town. It is alleged that he was called by Torres, the station master of the railroad company, and also by a policeman, and that he was also ordered by the mayor of the town to look after the men. The complaint also alleges that Reed, the section foreman, who it may be presumed was in charge of the gang on the hand car, called to see the wounded persons at various times, and asked the doctor to do all he could for them. The complaint further alleges that the company paid for the medicines used, and also paid a claim which was presented by the widow of the man who died, but that the said company had refused to pay the plaintiff's bill, amounting to $611.

From these alleged facts it may be presumed to have been intended to deduce the liability of the company, either in a general way, on the ground that the company is liable to pay for attention to persons wounded in its service, or that the

said company by paying some of these claims, and by the actions of its station master and foreman, in connection with the wounded laborers, can be held to have entered into an implied contract to pay the plaintiff's claim.    And from the opinion attached by the district judge to the judgment it would seem that the court below entertained some such views as those mentioned.    But the company is not liable in a general way, nor usually, to pay the expenses of persons wounded in its service for their treatment at a hospital or elsewhere. If the company is liable at all on account of the accident, it is to the people who were wounded, and they may be made liable to the surgeon who attended them, but the liability of the company to the wounded men cannot be transferred by legal intendment to the surgeon, giving him a right to bring a suit thereupon.

See the statute known as employers' liability, etc. (Rev. Stat., p. 151, section 323.)

If the company is liable in this action it is on a contract, and this contract is either express or implied.    Certainly no express contract is alleged in the complaint and the circumstances alleged from which one is sought to be implied are insufficient whereon to found any obligation whatever.    The complaint does not set out any contract made between the plaintiff and the company for the rendition of his professional services which may have given rise to the action brought by him. Nor does it even state that any of the said services were rendered at the request of the company.    Such being the case, the complaint cannot be held to state facts sufficient to constitute a cause of action.    The demurrer should have been held good, and the case dismissed.

An incidental question also arises on the consideration of this record as to whether or not the documents referred to in the complaint are sufficiently designated and identified to make them a part of the same.    In the opinion of Mr. Justice Wolf, in the case of *Díaz Caneja* v. *Pedro María Rossy*, No. 50, which was decided by this court on the 4th instant, the

doctrine is announced which would decide this question in the negative. He says:

"On the other hand, there was a trial below, and the court considered that the defendant had some defenses. There is no bill of exceptions or statement of facts in the record, and various writings are found in the transcript which form no part of the complaint. It would be impossible for us to review the evidence without one of the modes of certification which the Code of Civil Procedure prescribes. The writings to which the complaint refers and which the answer admits we have considered as being annexed to the complaint although the deeds referred to do not bear the number mentioned in the complaint. Where it is proposed to rely on written documents forming part of the complaint by virtue of section 119 of the Code of Civil Procedure, some identification of such instruments as have been annexed to the complaint should appear in the transcript which is brought before us, in order that we may know what papers are actually annexed and what were merely offered in evidence at the trial."

We are in entire accord with the principles herein announced, and hereby approve and reiterate the same as applicable to the present case.

The judgment in this case should be reversed, the demurrer sustained and the complaint dismissed because it shows no cause of action. The costs both of this court and the court below should be adjudged against the plaintiff herein.

*Reversed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.